IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

GARY LEE FLEMING,                          No. C 08-5011 CW (PR)

          Plaintiff,                       ORDER GRANTING DEFENDANTS'
                                           MOTION FOR SUMMARY JUDGMENT;
     v.                                    AND REQUIRING SERVICE ON
                                           DEFENDANT BROWN
EDMUND G. BROWN, et al.,
                                           (Docket no. 40)
          Defendants.
_____/

INTRODUCTION

     Plaintiff Gary Lee Fleming, a state prisoner incarcerated at
the California Medical Facility (CMF), brought this pro se civil
rights case under 42 U.S.C. § 1983, stemming from his incarceration
at Salinas Valley State Prison (SVSP).  He alleges that prison
officials at SVSP were deliberately indifferent to his serious
medical needs by (1) neglecting to assist him with showering and
leaving him "in urine" for six days in early January 2008; and
(2) housing him in the Administrative Segregation Unit (ASU) from
January 2008 through August 2008 during which time they "stopped"
his treatment.  (Compl. at 3a-3c.)

     On November 3, 2008, Plaintiff filed a civil rights complaint
pursuant to 42 U.S.C. § 1983 against prison officials at SVSP.
(Compl. at 1.)  He sought injunctive relief in the form of a
transfer to a medical prison, and he also requested $20,000 in
money damages.  (Id. at 3c.)

     On July 6, 2009, the Court found cognizable Plaintiff's Eighth
Amendment deliberate indifference claims against the following
Defendants: SVSP Chief Deputy Warden G. A. Neotti; SVSP Facility
Captain M. Muniz; SVSP Chief Medical Officer Dr. Charles Dudley

Lee; and Appeals Examiner N. Grannis.  (July 6, 2009 Order at 6.)

Plaintiff's supervisory liability claims against Defendants

Governor Arnold Schwarzenegger[1] and SVSP Wardens M. Evans and L. A.

Jones were dismissed with leave to amend.  (Id.)

On August 5, 2009, Plaintiff filed an amended complaint

against Defendants Evans and Jones and the Governor of the State of

California for deliberate indifference to serious medical needs in

violation of the Eighth Amendment.  (Am. Compl. at 1.)  He also

added a claim under the Americans with Disabilities Act (ADA)

against the Defendant Governor.  (Id.)

On September 4, 2009, Defendants Grannis, Lee, Muniz and

Neotti filed a motion to dismiss based on Plaintiff's failure to

exhaust his claims and on preemption by two federal class actions.

On August 4, 2010, the Court denied Defendants' motion to

dismiss Plaintiff's claims as unexhausted.  (Aug. 4, 2010 Order at

7-8.)  Plaintiff's request for injunctive relief was dismissed as

moot because by that time his housing needs had been met.  (Id. at

4.)  Thus, Defendants' claim of preemption of his request for

injunctive relief was also deemed moot.  The Court denied

Defendants' motion to dismiss Plaintiff's claim for damages on the

ground that the claim was preempted.  (Id. at 5.)  The Court also

denied Defendants' motion to dismiss the ADA claim in the amended

complaint against the Defendant Governor.[2]  (Id. at 6.)  Plaintiff's

_____

[1] Because Plaintiff is suing the Governor of the State of
California in his official capacity, the Court substitutes current
Governor Edmund G. Brown as the Defendant Governor in place of
former Governor Arnold Schwarzenegger.

[2] The Defendant Governor has not yet been served in this
action; therefore, the Court will order service of the ADA claim on
this Defendant below.

United States District Court
For the Northern District of California

Eighth Amendment claim in his amended complaint against Defendants Evans, Jones and the Defendant Governor for deliberate indifference to serious medical needs was dismissed because Plaintiff failed to allege specific conduct regarding this claim. (Id. at 2 n.1.) Finally, the Court granted Defendants' request for an extension of time to file their dispositive motion. (Id. at 11.)

On October 1, 2010, Defendants Grannis, Lee, Muniz and Neotti filed a motion for summary judgment. (Docket no. 40.) The due date for Plaintiff to file an opposition brief was November 30, 2010. Plaintiff did not file an opposition brief or request an extension of time.

For reasons discussed below, the Court GRANTS Defendants' motion for summary judgment.

FACTUAL BACKGROUND

Plaintiff is disabled and uses a wheelchair. (Compl. at 3c.) He is a Level IV inmate, the highest security classification level at the California Department of Corrections and Rehabilitation (CDCR), and has been designated as a sensitive-needs yard (SNY) inmate requiring protective custody. (Decl. Muniz ¶ 7.)

I.   Placement at the ASU

Plaintiff was initially transferred from SVSP to CMF on October 29, 2007 for psychiatric treatment. (Decl. Muniz, Ex. B.) On November 16, 2007, Plaintiff appeared before the Institutional Classification Committee (ICC) at the Department of Mental Health for an initial review. The ICC determined that he was not eligible to return to protective custody at SVSP's SNY. (Id.) However, on December 28, 2007, he was "inadvertently" transferred back to SVSP.

3

United States District Court
For the Northern District of California

(<u>Id.</u>)

Upon his return from CMF to SVSP on December 28, 2007, Plaintiff was placed in the ASU. (Decl. Muniz ¶ 9.) On January 10, 2008, Plaintiff attended an Initial ASU ICC review hearing. (<u>Id.</u> ¶ 14.) The committee determined that Plaintiff could not stay at SVSP because his Level IV status required that he be housed in Facility A, but he had a documented enemy there. (<u>Id.</u>) Consequently, because of his documented enemy, his status as a Level IV sensitive-needs inmate, his "Disability Impacting Placement--Wheelchair" status under the <u>Armstrong</u>[3] Remedial Plan, and his status in the Correctional Clinical Case Management system, the committee elected to refer his case to the Classifications Staff Representative (CSR) for transfer to the Substance Abuse Treatment Facility's (SATF) Level IV SNY. (<u>Id.</u>) The committee elected to retain Plaintiff in the ASU, pending transfer, for his safety and security. (<u>Id.</u>)

On April 24, 2008, Plaintiff attended a program review before the ICC. (<u>Id.</u> ¶ 15.) The committee observed that, despite Plaintiff's designation to SATF's Level III (medium to high security) SNY, a shortage of available Disabled Person Wheelchair (DPW) beds in that facility prevented his transfer. (<u>Id.</u>) The committee then attempted to obtain alternative housing for Plaintiff; however, the only available cell housed an inmate of another race, and Plaintiff refused to live with anyone of a different race. (<u>Id.</u>) As a result, the committee elected to refer his case to the CSR for transfer to SVSP's Level III SNY on an override. (<u>Id.</u>)

On May 6, 2008, the ASU ICC noted that the CSR had endorsed

---

[3] <u>Armstrong v. Brown</u>, Case No. C 94-2307 CW (N.D. Cal.).

**United States District Court**
For the Northern District of California

Plaintiff's transfer to SVSP's Level III SNY.  (<u>Id.</u> ¶ 16.)
Subsequently, on May 8, 2008, at a hearing attended by Plaintiff,
the ICC elected to release Plaintiff from the ASU to Facility B in
SVSP's Level III SNY when a bed became available.  (<u>Id.</u>)

By May 12, 2008, Plaintiff had not been transferred.
Consequently, he submitted a CDC Form 602 inmate appeal in which he
requested a transfer from SVSP.  (SVSP Log No. SVSP-D-08-2336;
Decl. Neotti ¶ 6.)  Initially, his request was denied.  (SVSP Log.
No. SVSP-D-08-2336.)

By early June 2008, Plaintiff still had not been transferred,
and on June 12, 2008, he attended another ICC hearing.  (Decl.
Muniz ¶ 17.)  The committee elected to refer his case to the CSR
for transfer to either SATF's Level III SNY or Pleasant Valley
State Prison's (PVSP) Level III SNY.  (<u>Id.</u>)  The committee also
decided to retain Plaintiff in the ASU, pending his transfer.
(<u>Id.</u>)

On June 25, 2008, in the second level appeal response to
Plaintiff's May 12, 2008 inmate appeal, Defendant Neotti partially
granted Plaintiff's request for a transfer.  Defendant Neotti noted
that the ICC reviewed Plaintiff's case on June 12, 2008 and
referred him for a transfer to SATF's Level III SNY with an
alternative placement at PVSP.  (Decl. Neotti ¶ 8.)

On July 30, 2008, the CSR endorsed Plaintiff for transfer to
SVSP's Level III SNY.  (Decl. Muniz ¶ 18.)

On August 11, 2008, Plaintiff was transferred to Facility B on
SVSP's Level III SNY in a wheelchair-accessible cell.  (Decl.
Neotti ¶ 10; Decl. Muniz ¶ 18.)

II.   Treatment in the ASU

        A.   Assistance with Basic Needs
          (Late December 2007 to Early January 2008)

Plaintiff alleges that between December 31, 2007 and January 5, 2008, prison staff and physicians left him "in urine" and denied him access to showers in violation of his constitutional rights. (Compl. at 3a.)

On December 31, 2007, the Interdisciplinary Progress Notes show that Plaintiff "had some difficulty getting self from mattress to wheelchair, wheelchair sliding" but that he "moved to toilet then wheelchair with no problem." (Decl. Lee, Ex. A at 0000103.) On the same day, prison staff and physicians observed him every few hours, providing medication, monitoring his blood pressure, and giving him books. (Id.) The logs do not indicate whether Plaintiff took a shower.

On January 1, 2008, prison staff observed Plaintiff every few hours and noted that he slept through most of the day. (Id.) The log shows that at 11:40 AM Plaintiff had "no complaints." (Id.) The log, however, does not indicate whether Plaintiff took a shower or asked for assistance in taking one.

On January 2, 2008, the Interdisciplinary Progress Notes show that Plaintiff received medication, took food, and underwent a medical examination. (Id. at 102.) At the examination, Dr. Pajong noted that Plaintiff was "ok transferring from toilet to wheelchair but still felt week [sic]." (Id. at 0000221.) A CTC admitting record shows that Plaintiff needed "a cell ADA" and that he experienced "frequent urination." (Id. at 0000214.) The logs do not indicate whether Plaintiff took a shower or asked for

assistance in taking one.  (<u>Id.</u> at 0000221.)

On January 3, 2008, Plaintiff received medications and underwent a full evaluation.  (<u>Id.</u> at 0000156-57, 0000231.)  A physician's order on that date indicates that Plaintiff was transferred to another room for "better monitoring."  (<u>Id.</u> at 0000231.)  Again, the logs do not indicate whether Plaintiff took a shower or asked for assistance in taking one.

On January 4, 2008, Dr. Pajong approved a request for stability and balance training to improve Plaintiff's ability to transfer from his bed and toilet to his wheelchair.  (<u>Id.</u> at 0000183.)  Plaintiff received medications throughout the day.  (<u>Id.</u> at 0000156-57.)

On January 5, 2008, Plaintiff received medications and underwent an evaluation by a doctor.  (<u>Id.</u> at 0000156-57, 0000222.)  The Interdisciplinary Progress Notes indicate that Plaintiff was "aware of [his] position before transfer to [his] bed from [his] wheelchair" and indicated that he needed a "mobilizer and cane."  (<u>Id.</u> at 0000222.)  These logs also noted "urinary frequency" and the need for a "condom catheter."  (<u>Id.</u>)

By January 10, 2008 Plaintiff was "much better" at transferring himself from his bed to his wheelchair.  (<u>Id.</u> at 0000223.)  The Interdisciplinary Progress Notes and physicians' orders, however, do not indicate that Plaintiff was left to sit "in urine" or otherwise alerted prison staff and physicians that he had trouble using the toilet during these six days. (Decl. Lee, Ex. A.)  Nor do they show that Plaintiff asked for assistance in taking a shower or complained that staff had refused to help him shower. (<u>Id.</u>)

B.   Medical Treatment and Accommodations
     (December 28, 2007 and August 11, 2008)

The Interdisciplinary Progress Notes, physicians' orders, and other logs indicate that between December 28, 2007 and August 11, 2008, while he was housed in the ASU, Plaintiff received his medications and underwent various medical examinations.  (Decl. Lee ¶ 5, Ex. A at 0000037-38, 0000040, 0000045, 0000051-53, 0000055-62, 0000070-88, 0000094, 0000097, 0000102-03, 0000105, 0000108-74, 0000221-35, 0000250-58.)

In particular, in early January 2008, Dr. Pajong observed Plaintiff's "falling tendency" and requested education and training to assist with this problem.  (Id. at 0000219, 0000221-25, 0000229.)  By mid-January, Dr. Pajong noticed some improvement in Plaintiff's ability to transfer from his bed to his wheelchair.  (Id. at 0000223, 0000225.)  Moreover, prison logs indicate that Plaintiff was scheduled to receive, but refused, showers on January 18 and 29, 2008.  (Id. at 0000217-18.)  On each day of January, Plaintiff received medications.  (Id. at 0000157.)

On February 6, 2008, Plaintiff received psychiatric medications and medications for chest pain.  (Decl. Lee, Ex. A at 0000084-85.)  On February 7, 2008, Plaintiff submitted a Reasonable Modification or Accommodation Request (CDC Form 1824) in which he asked for a fresh change of laundry, as needed, to accommodate his frequent urination problem.  (Compl., Exs. CDC Form 1824, SVSP-D-08-00637, dated Feb. 7, 2008.)  SVSP Sgt. M. Lutes granted Plaintiff's request on March 3, 2008.  (Id.)

On March 21, 2008, Plaintiff underwent a radiological examination at Salinas Valley Radiologists, Inc., an off-site location, to investigate his neck and shoulder pain.  (Id. at

8

United States District Court
For the Northern District of California

0000012.)  Tests revealed evidence of a possible rotator cuff injury, but no fracture or dislocation.  (<u>Id.</u>)

On each day in April 2008, Plaintiff received various medications, including Enalapril, Tylenol, Ranitidine, morphine and Venlafaxine.  (<u>Id.</u> at 0000150-51.)

On May 1, 2008, SVSP prison staff members Turner and Moore attempted to speak with Plaintiff about a 602 inmate appeal regarding his needs.  (<u>Id.</u> at 0000181.)  Plaintiff refused to speak with them because he was feeling ill.  (<u>Id.</u>)  On May 2, 2008, Dr. Sidon[4] gave Plaintiff a referral for an MRI as a follow-up to Plaintiff's concerns about a rotator-cuff injury and neck pain. (<u>Id.</u> at 0000178.)

On each day in May 2008, Plaintiff received medications.  (<u>Id.</u> at 0000147.)

On June 24, 2008, Plaintiff received psychiatric medications in addition to Ranitidine, Tums, morphine and Tylenol, among others.  (Id. at 0000070, 0000139-40.)  Also in June 2008, Plaintiff requested and was granted access to library materials. (Compl., Exs. "First Level Appeal Log" SVSP-D-08-03017.)

On July 11, 2008, Plaintiff fell on his head while attempting to transfer from his bed to his wheelchair and was taken to the emergency room.  (Compl. at 3b; Decl. Lee, Ex. A at 0000048.)  He suffered a hematoma on the right side of his forehead and experienced vomiting, neck pain and abdominal pain.  (Decl. Lee, Ex. A at 000005, 0000048.)

On July 18, 2008, Plaintiff underwent radiological

---

[4] The name of this physician is difficult to decipher from the record.

9

examinations.  (<u>Id.</u> at 0000010.)  The tests revealed "mild cervical spondylosis with no cord compression but mild to moderate right foraminal stenosis at C5-6." (<u>Id.</u>)

A medical evaluation dated August 8, 2008, about a month after Plaintiff fell, indicated that Plaintiff showed no "significant symptoms" as a result of this fall except for "muscle pains." (<u>Id.</u> at 00000248.)  On that same date, a physician ordered that "for safety reason" Plaintiff's bed be removed from the room so that he could sleep on the floor on a "safety mattress." (<u>Id.</u> at 00000256.)  On August 9, 2008, Dr. Biller instructed the nursing staff to conduct a "transfer trial" to see if Plaintiff could transfer from his wheelchair to his bed.  (<u>Id.</u> at 00000257.)

On August 8, 2008, Plaintiff submitted a CDC Form 1824 requesting assistance with showers.  (Compl., Exs., CDC Form 1824, #SVSP-D-08-03633.)  SVSP Sgt. Seltzer and Facility D Captain Rankin partially granted Plaintiff's request.  (<u>Id.</u>)  An appeal of the partial grant of this request, dated August 16, 2008, shows that Plaintiff acknowledged that he was receiving assistance in transferring between his wheelchair and his shower wheelchair. (<u>Id.</u> at #SVSP-D-08-03633.)  Sgt. Seltzer and Captain Rankin reminded Plaintiff that "staff would be able to assist [him] with any further ADA issues" during his stay in Building 8.  (<u>Id.</u>) During this same investigation, when asked whether Plaintiff had any other ADA issues that needed to be addressed, he said, "No." (<u>Id.</u>)

Two documents, "Comprehensive Accommodation Chronos," dated August 6, 2008 and September 22, 2008, show that Plaintiff was to receive daily showers.  (Decl. Lee, Ex. A at 0000064, 0000066.)

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

DISCUSSION

I.   Legal Standard

    Summary judgment is properly granted when no genuine and
disputed issues of material fact remain and when, viewing the
evidence most favorably to the non-moving party, the movant is
clearly entitled to prevail as a matter of law.  Fed. R. Civ. P.
56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986);
Eisenberg v. Ins. Co. of N. Am., 815 F.2d 1285, 1288-89 (9th Cir.
1987).

    The moving party bears the burden of showing that there is no
material factual dispute.  Therefore, the Court must regard as true
the opposing party's evidence, if supported by affidavits or other
evidentiary material.  Celotex, 477 U.S. at 324; Eisenberg, 815
F.2d at 1289.  The Court must draw all reasonable inferences in
favor of the party against whom summary judgment is sought.
Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574,
587 (1986); Intel Corp. v. Hartford Accident & Indem. Co., 952 F.2d
1551, 1558 (9th Cir. 1991).

    Material facts which would preclude entry of summary judgment
are those which, under applicable substantive law, may affect the
outcome of the case.  The substantive law will identify which facts
are material.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248
(1986).  Where the moving party does not bear the burden of proof
on an issue at trial, the moving party may discharge its burden of
showing that no genuine issue of material fact remains by
demonstrating that "there is an absence of evidence to support the
nonmoving party's case."  Celotex, 477 U.S. at 325.  The burden
then shifts to the opposing party to produce "specific evidence,

through affidavits or admissible discovery material, to show that the dispute exists." Bhan v. NME Hosps., Inc., 929 F.2d 1404, 1409 (9th Cir. 1991), cert. denied, 502 U.S. 994 (1991).  A verified complaint may be used as an opposing affidavit under Rule 56 of the Federal Rules of Civil Procedure, as long as it is based on personal knowledge and sets forth specific facts admissible in evidence.  Schroeder v. McDonald, 55 F.3d 454, 460 & nn.10-11 (9th Cir. 1995).  A complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.  Celotex, 477 U.S. at 323.

II.  Evidence Considered

     A district court may only consider admissible evidence in ruling on a motion for summary judgment.  See Fed. R. Civ. P. 56(e); Orr v. Bank of America, 285 F.3d 764, 773 (9th Cir. 2002).

     In support of Defendants' motion for summary judgment, declarations along with exhibits have been filed by Defendants Grannis, Lee, Muniz and Neotti.

     As mentioned above, Plaintiff did not file an opposition to the motion for summary judgment.  However, Plaintiff verified his complaint filed on November 3, 2008 by signing it under penalty of perjury.  Also in the record is Plaintiff's amended complaint, which is signed under penalty of perjury.[5]  Therefore, for the purposes of this Order, the Court will treat Plaintiff's original complaint filed on November 3, 2008 and his amended complaint filed

---

[5] Plaintiff also filed a document entitled, "Notice of Evidence," which consists of medical records and other items relevant to this case.  Plaintiff, however, did not include an affidavit of the custodian of medical records, and the important documents are duplicated in Exhibit A of Defendant Lee's Declaration.  Therefore, the Court will not consider Plaintiff's Notice of Evidence.

United States District Court
For the Northern District of California

on August 5, 2009 as affidavits in opposition to Defendants' motion for summary judgment under Rule 56.  See Schroeder, 55 F.3d at 460 & nn.10-11.

III. Legal Claims

    A.   Deliberate Indifference to Serious Medical Needs

    Deliberate indifference to serious medical needs violates the Eighth Amendment's proscription against cruel and unusual punishment.  See Estelle v. Gamble, 429 U.S. 97, 104 (1976); McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds, WMX Technologies, Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc); Jones v. Johnson, 781 F.2d 769, 771 (9th Cir. 1986).  A determination of "deliberate indifference" involves an examination of two elements: the seriousness of the prisoner's medical need and the nature of the defendant's response to that need.  See McGuckin, 974 F.2d at 1059.

    1.   Serious Medical Need

    A "serious" medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the "unnecessary and wanton infliction of pain." Id. (citing Estelle, 429 U.S. at 104.)  The existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain are examples of indications that a prisoner has a "serious" need for medical treatment.  Id. at 1059-60 (citing Wood v. Housewright, 900 F.2d 1332, 1337-41 (9th Cir. 1990)).

    Defendants were aware that Plaintiff was wheelchair-bound and

United States District Court
For the Northern District of California

therefore had serious medical needs. (Decl. Lee, Ex. A.)  In early
January 2008, the Interdisciplinary Progress Notes and physicians'
orders indicate that Plaintiff struggled to transfer from his
wheelchair to his bed and suffered from urinary incontinence. (See
id. at 0000214, 0000221.)  Therefore, it is not in dispute that
Plaintiff had serious medical needs and required special assistance
with certain tasks while he was housed in the ASU.  Rather,
Defendants contend that Plaintiff has failed to show that they were
deliberately indifferent to his serious medical needs from January
2008 through August 2008.

      2.    Deliberate Indifference

A prison official is deliberately indifferent if he or she
knows that a prisoner faces a substantial risk of serious harm and
disregards that risk by failing to take reasonable steps to abate
it.  Farmer v. Brennan, 511 U.S. 825, 837 (1994).  The prison
official must not only "be aware of facts from which the inference
could be drawn that a substantial risk of serious harm exists," but
"must also draw the inference."  Id.

In order to establish deliberate indifference, therefore,
there must be a purposeful act or failure to act on the part of the
defendant and resulting harm.  See McGuckin, 974 F.2d at 1060;
Shapley v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407
(9th Cir. 1985).  A finding that the defendant's activities
resulted in "substantial" harm to the prisoner is not necessary,
however.  McGuckin, 974 F.2d at 1060, 1061 (citing Hudson v.
McMillian, 503 U.S. 1, 7-10 (1992).  Such indifference may appear
when prison officials deny, delay or intentionally interfere with
medical treatment, or it may be shown in the way in which prison

officials provide medical care.  <u>See</u> <u>McGuckin</u>, 974 F.2d at 1062.

The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones.  <u>See</u> <u>Farmer</u>, 511 U.S. at 832 (1994).  The treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment.  <u>See</u> <u>Helling v. McKinney</u>, 509 U.S. 25, 31 (1993).

                    a.   Defendants Muniz and Lee

Plaintiff alleges, in general, that Defendants Muniz and Lee failed to provide him adequate medical treatment during his stay in the ASU from January 2008 to August 2008.  (Compl. at 3a-3c.)  More specifically, Plaintiff claims that from December 31, 2007 to January 5, 2008, he was (1) "in urine" for six days and (2) without access to showers.  (Compl. at 3a.)

As to the first allegation, the evidence in the record establishes that in February 2008 Plaintiff was suffering from a urinary problem so severe that he frequently required a fresh change of laundry.  (Decl. Lee, Ex. A at 0000214, 0000222; Compl., Ex. A, CDC Form 1824, Log No. 08-00637.)  However, the record fails to show that Plaintiff was left to sit "in urine" for the entire period comprising the first six days of January.  (Decl. Lee, Ex. A at 0000086, 0000102-03, 0000105, 0000156-57, 0000168-74, 0000220-21, 0000230-31.)  The Interdisciplinary Progress Notes and other documents from this time period establish that prison staff was observing him every few hours to ensure that he was safe and that his medical as well as physical needs were being monitored.  (<u>Id.</u>)  While the logs suggest that Plaintiff suffered from urinary problems for which he required a catheter, they do not show that

15

United States District Court
For the Northern District of California

Plaintiff complained or attempted to alert prison staff and physicians that he was left to sit "in urine" during this period of extensive observation.  (Id.)

Nor do the logs or 602 inmate appeal forms show that Plaintiff asked for a shower and failed to receive one during this period. (Id.; Compl. Exs.)  The logs indicate that Plaintiff himself refused showers on January 18 and 29, 2008 because he was experiencing pain.  (Decl. Lee, Ex. A at 0000217-18.)

Moreover, even if prison staff neglected to assist him with a shower during those six days, such an omission does not amount necessarily to a constitutional violation.  See Davenport v. DeRoberts, 844 F.2d 1310, 1316-17 (7th Cir.), cert. denied, 488 U.S. 908 (1988).  For inmates in segregation, showers may be limited to as few as one shower per week without violating the Eighth Amendment.  See id.

Hence, the record does not support Plaintiff's allegations that he was left to sit for six days "in urine" or that prison staff violated his constitutional rights by denying him assistance with showers.  (Decl. Lee, Ex. A; Compl. at 3b.)

Nor does the record demonstrate that Plaintiff's treatment "stopped" while he was in the ASU from January 2008 to August 2008. (Compl. at 3b.)  For instance, Plaintiff received medication for neck pain and asthma in February 2008, underwent a radiological evaluation for a rotator cuff injury in March 2008, and was referred for an MRI for shoulder and neck pain in May 2008.  (Decl. Lee, Ex. A at 0000012, 0000083-85, 0000178).  Moreover, throughout this period, Plaintiff submitted two CDC Form 1824 requests, both of which were granted, to resolve problems with his laundry and

access to library materials.  (Compl., Exs., CDC Form 1824, SVSP-D-08-00637, dated Feb. 7, 2008; CDC Form 1824, SVSP-D-08-3017, dated June 30, 2008.)

On July 11, 2008, Plaintiff suffered injuries after he fell in attempting to transfer from his wheelchair to his bed.  (Compl. at 3b.)  This incident, however, fails to make out a case of deliberate indifferent to serious medical needs for two reasons.  First, Defendants recognized that Plaintiff had difficulty in transferring from his wheelchair as early as January 2008 and took appropriate steps to remedy the problem, including recommendations for balance training and the use of a cane.  (Decl. Lee, Ex. A at 0000103, 0000184, and 0000223.)  Because Defendants took "reasonable steps to abate" the risk of his falling, Plaintiff's allegations fail to establish that they disregarded such a risk.  See Farmer, 511 U.S. at 837.  Second, Defendants responded appropriately to Plaintiff's fall in July 2008.  They offered Plaintiff emergency treatment immediately after he fell and provided continuing medical attention to his injury and the pain it caused.  (Decl. Lee, Ex. A at 0000004-5, 0000007-8, 0000020, 0000028-29, 0000034-36, 0000048.)

At most, Defendants may have been negligent in failing to provide adequate assistance to ensure that Plaintiff would not fall while attempting to transfer from his wheelchair to his bed.  However, a claim of medical malpractice or negligence is insufficient to make out a violation of the Eighth Amendment.  See Toguchi v. Chung, 391 F.3d 1051, 1060-61 (9th Cir. 2004); Hallett v. Morgan, 296 F.3d 732, 744 (9th Cir. 2002); Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981).  If Plaintiff seeks to recover

17

on a theory of negligence, he should make a claim in state court.

Plaintiff has failed to support his burden of raising a genuine dispute of material fact to support his claim that Defendants Lee's and Muniz's actions rose to the level of deliberate indifference to serious medical needs.  Therefore, Defendants Lee and Muniz are entitled to summary judgment.

b.   Defendants Neotti and Grannis

Defendants Neotti and Grannis reviewed 602 inmate appeals submitted by Plaintiff with respect to his placement in the ASU. (Pl.'s Exs., 602 appeal log no. SVSP-D-08-02336 at 3.)  Plaintiff argues that Defendants Neotti and Grannis failed to remedy constitutional violations against him by refusing to remove him from the ASU.  (Id.)  However, Plaintiff's argument is unavailing in several respects.

First, the record establishes that Plaintiff was placed into the ASU for legitimate penological reasons, including: (1) his documented enemy in Facility A where he would otherwise have been housed; (2) his status as a Level IV sensitive-needs inmate; (3) his "Disability Impacting Placement--Wheelchair" status under the Armstrong Remedial Plan"; and (4) his status in the Correctional Clinical Case Management System.  (Decl. Muniz ¶ 14.)

Second, the record does not show that Defendants Grannis and Neotti, neither of whom is a doctor, were involved in Plaintiff's medical treatment while he was housed in the ASU.  (Compl., Exs.; Decl. Grannis ¶ 12; Decl. Neotti ¶ 9.)  They merely responded to Plaintiff's May 12, 2008 602 inmate appeal.  (Id.)  In fact, at the second level of that appeal, Defendant Neotti partially granted Plaintiff's request for a transfer.  (Decl. Neotti ¶ 8.)  He noted

United States District Court
For the Northern District of California

18

United States District Court
For the Northern District of California

that the CSR to whom Plaintiff's case had been referred had already endorsed him for a transfer to the SATF, with alternative placement at PVSP. (Id.)  At that point, pending bed availability, Defendant Neotti could only partially grant Plaintiff's request because it was not possible to expedite the transfer. (Id. ¶ 9.)  Likewise, at the Director's Level, Defendant Grannis ascertained that the ICC took affirmative steps to ensure that Plaintiff received adequate housing accommodations in light of his disability and enemy concerns. (Decl. Grannis ¶ 8.)  Plaintiff's transfer from the ASU to appropriate housing "took some time to complete" because of a lack of DPW bed space. (Id. ¶ 12.)  By the time that Defendant Grannis undertook this investigation, Plaintiff had already been transferred to Facility B, and therefore the request for transfer was moot. (Id. ¶ 11.)

Furthermore, to the extent that Plaintiff seeks relief against Defendants Grannis and Neotti because he disagreed with their rulings on his 602 inmate appeal, this claim must fail.  Prisoners have no absolute constitutional right to have their grievances heard in a prison administrative appeal system.  Although state statutes or regulations may give rise to constitutionally-protected liberty interests that cannot be taken away without due process of law, California prison regulations do not create such a liberty interest in an inmate grievance procedure.  The regulations grant prisoners a purely procedural right and set forth no substantive standards, see Cal. Code Regs. tit. 15, § 3084 et seq. (applicable to state prisons), and such provisions cannot form the basis of a constitutionally cognizable liberty interest.  See also Smith v. Noonan, 992 F.2d 987, 989 (9th Cir. 1993); Mann v. Adams, 855 F.2d

639, 640 (9th Cir. 1988).

Finally, Plaintiff's claim that Defendants Grannis and Neotti violated his Eighth Amendment rights by refusing to remove him from the ASU must fail.  An indeterminate sentence in the ASU, without more, does not constitute cruel and unusual punishment in violation of the Eighth Amendment.  See Anderson v. County of Kern, 45 F.3d 1310, 1315-16 (9th Cir. 1995) (no contact with any other inmate in administrative segregation, either for exercise, day room access or otherwise not cruel and unusual punishment), cert. denied, 516 U.S. 916 (1995); Toussaint v. Yockey, 722 F.2d 1490, 1494 n.6 (9th Cir. 1984) (more than usual hardships associated with administrative segregation required to state Eighth Amendment claim).

Plaintiff has failed to carry his burden of raising a genuine dispute of material fact to support his claim that Defendants Neotti's and Grannis's actions rose to the level of deliberate indifference to serious medical needs.  Accordingly, Defendants Neotti and Grannis are entitled to summary judgment.

B.   Qualified Immunity

Defendants also claim qualified immunity.  The Court has found no constitutional violation.  If the facts alleged here amounted to a constitutional violation, a finding of qualified immunity would be appropriate.

CONCLUSION

For the foregoing reasons, the Court orders as follows:

1.   The motion for summary judgment filed by Defendants Grannis, Lee, Muniz and Neotti (docket no. 40) is GRANTED.

2.   As mentioned above, the Defendant Governor has not been served in this action, and there is still a pending ADA claim

against this Defendant in his official capacity.  Therefore, the Clerk shall mail a Notice of Lawsuit, a Request for Waiver of Service of Summons, two copies of the Waiver of Service of Summons, as well as the following: (1) the original complaint and all attachments thereto (docket no. 1); (2) the Order of Service (docket no. 8); (3) the amended complaint and all attachments thereto (docket no. 22); (4) the Court's August 4, 2010 Order Denying Defendants' Motion to Dismiss (docket no. 33); and (5) this Order, to Defendant <u>Governor of the State of California</u>. Additionally, the Clerk shall mail a copy of this Order to Plaintiff.

3.   Defendant is cautioned that Rule 4 of the Federal Rules of Civil Procedure requires him to cooperate in saving unnecessary costs of service of the summons and complaint.  Pursuant to Rule 4, if this Defendant, after being notified of this action and asked by the Court, on behalf of Plaintiff, to waive service of the summons, fails to do so, he will be required to bear the cost of such service unless good cause be shown for his failure to sign and return the waiver form.  If service is waived, this action will proceed as if this Defendant had been served on the date that the waiver is filed, except that pursuant to Rule 12(a)(1)(B), he will not be required to serve and file an answer before <u>sixty (60) days</u> from the date on which the request for waiver was sent.  (This allows a longer time to respond than would be required if formal service of summons is necessary.)  Defendant is asked to read the statement set forth at the foot of the waiver form that more completely describes the duties of the parties with regard to waiver of service of the summons.  If service is waived after the

**United States District Court**
For the Northern District of California

date provided in the Notice but before Defendant has been personally served, the Answer shall be due <u>sixty (60) days</u> from the date on which the request for waiver was sent or <u>twenty (20) days</u> from the date the waiver form is filed, whichever is later.

4.   Defendant shall answer the complaint in accordance with the Federal Rules of Civil Procedure.   The following briefing schedule shall govern dispositive motions in this action:

a.   No later than <u>thirty (30) days</u> from the date Defendant's answer is due, he shall file a motion for summary judgment or other dispositive motion.   The motion shall be supported by adequate factual documentation and shall conform in all respects to Federal Rule of Civil Procedure 56. If Defendant is of the opinion that this case cannot be resolved by summary judgment, he shall so inform the Court prior to the date the summary judgment motion is due.   All papers filed with the Court shall be promptly served on Plaintiff.

b.   Plaintiff's opposition to the dispositive motion shall be filed with the Court and served on this Defendant no later than <u>thirty (30) days</u> after the date on which his motion is filed. The Ninth Circuit has held that the following notice should be given to <u>pro se</u> plaintiffs facing a summary judgment motion:

> The defendant has made a motion for summary judgment by which they seek to have your case dismissed. A motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure will, if granted, end your case.
>
> Rule 56 tells you what you must do in order to oppose a motion for summary judgment.   Generally, summary judgment must be granted when there is no genuine issue of material fact -- that is, if there is no real dispute about any fact that would affect the result of your case, the party who asked for summary judgment is entitled to judgment as a matter of law, which will end your case.

22

**United States District Court**
For the Northern District of California

> When a party you are suing makes a motion for summary judgment that is properly supported by declarations (or other sworn testimony), you cannot simply rely on what your complaint says. Instead, you must set out specific facts in declarations, depositions, answers to interrogatories, or authenticated documents, as provided in Rule 56(e), that contradict the facts shown in the defendant's declarations and documents and show that there is a genuine issue of material fact for trial. If you do not submit your own evidence in opposition, summary judgment, if appropriate, may be entered against you. If summary judgment is granted [in favor of the defendant], your case will be dismissed and there will be no trial.

See Rand v. Rowland, 154 F.3d 952, 962-63 (9th Cir. 1998) (en banc).

Plaintiff is advised to read Rule 56 of the Federal Rules of Civil Procedure and Celotex Corp., 477 U.S. at 322-23 (party opposing summary judgment must come forward with evidence showing triable issues of material fact on every essential element of his claim). Plaintiff is cautioned that because he bears the burden of proving his allegations in this case, he must be prepared to produce evidence in support of those allegations when he files his opposition to this Defendant's dispositive motion. Such evidence may include sworn declarations from himself and other witnesses to the incident, and copies of documents authenticated by sworn declaration. Plaintiff will not be able to avoid summary judgment simply by repeating the allegations of his complaint.

c. Defendant shall file a reply brief no later than fifteen (15) days after the date Plaintiff's opposition is filed.

d. The motion shall be deemed submitted as of the date the reply brief is due. No hearing will be held on the motion unless the Court so orders at a later date.

4. It is Plaintiff's responsibility to prosecute this case. Plaintiff must keep the Court informed of any change of address and

must comply with the Court's orders in a timely fashion.

     5.   Extensions of time are not favored, though reasonable extensions will be granted.  Any motion for an extension of time must be filed no later than <u>fifteen (15) days</u> prior to the deadline sought to be extended.

     6.   The Clerk of the Court is directed to substitute current Governor Edmund G. Brown as the Defendant Governor in place of former Governor Arnold Schwarzenegger.

     7.   This Order terminates Docket no. 40.

     IT IS SO ORDERED.

DATED: 7/27/2011

                                              CLAUDIA WILKEN
                                            United States District Judge